UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA MIRANDA,<br>  Plaintiff<br> v.<br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br>  Defendant. | Case No. 5:16-cv-01962-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Norma Miranda ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs addressing disputed issues in the case [Dkt. 19 ("Pl. Brief") and Dkt. 26 ("Def. Brief")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1] Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration, is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In July 2014, Plaintiff filed an application for SSI, alleging disability as of December 9, 2013. [Dkt. 15, Administrative Record ("AR") 23, 80-81.] Plaintiff's application was denied at the initial level of review and on reconsideration. [AR 23, 50-53, 55-60.] On November 19, 2015, a hearing was held before Administrative Law Judge Dana E. McDonald ("the ALJ"). [AR 596-625.] On December 10, 2015, the ALJ issued an unfavorable decision. [AR 23-29.]

The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. [AR 25.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of thyroid cancer in remission and status post gastric bypass surgery (December 2013). [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [*Id.*]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work (20 C.F.R. § 416.967(c)). [AR 25.] At step four, the ALJ found that Plaintiff did not have any past relevant work. [AR 28.] At step five, the ALJ found Plaintiff not disabled under Rule 203.25 of the Medical-Vocational Guidelines ("Grids") 20 C.F.R. Part 404, Subpt. P, App. 2, based on Plaintiff's RFC, age (30 years at time of application), education, and work experience. [AR 28-29.]

The Appeals Council denied review of the ALJ's decision on July 14, 2016. [AR 5-8.] This action followed.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to adequately consider the severity of Plaintiff's fibromyalgia; (2) rejecting the opinion of an examining physician; and (3) rejecting Plaintiff's pain and symptom testimony. [Pl.'s Br. at 4-12.]

### A. Plaintiff's Fibromyalgia

Plaintiff claims the ALJ failed to properly evaluate her fibromyalgia as a severe impairment. [Pl. Brief at 5-7.]

At step two of the sequential analysis, the claimant bears the burden to show the existence of medically determinable impairments that have more than a minimal effect on the ability to perform work-related activities. 20 C.F.R. § 416.920(a)(4)(ii); *see also Smolen v. Chater,* 80 F.3d 1273, 1289-90 (9th Cir. 1996). An impairment or combination of impairments may be found "'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling ("SSR") 85-28); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2013 WL 3104869 at *2. As there are no laboratory tests to confirm a diagnosis of fibromyalgia, "[t]he condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quoting

3

*Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).

SSR 12-2p directs how claims of fibromyalgia should be evaluated. *See Revels*, 874 F.3d at 662 (explaining that in evaluating a claim of fibromyalgia, "the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and *Benecke*"). To establish that fibromyalgia is a medically determinable impairment, the claimant must show that an acceptable medical source (licensed physician): (1) diagnosed fibromyalgia and (2) provided evidence to satisfy the diagnostic criteria set forth in either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 Criteria") or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 Criteria"). SSR 12-2p, 2013 WL 3104869 at \*2-3 (noting that a physician's diagnosis of fibromyalgia alone is not sufficient; the "evidence must document that the physician reviewed the claimant's medical history and conducted a physical exam").

Under the 1990 Criteria, the medical evidence must show: 1) "a history of widespread pain . . . that has persisted . . . for at least 3 months;" 2) at least 11 positive tender points, found bilaterally and above and below the waist; and 3) evidence that other disorders which could cause the symptoms were excluded. *Id.* at \*3 (footnotes omitted).

Under the 2010 Criteria, the medical evidence must show: 1) a history of widespread pain; 2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome;" and 3) evidence that other disorders which could cause the symptoms were excluded. *Id*. (footnotes omitted).

In the decision, the ALJ noted that Plaintiff alleged fibromyalgia as part of her disability claim, but concluded that fibromyalgia was not a severe, medically determinable impairment. [AR 25-26.] Plaintiff argues in her brief that she was

diagnosed with fibromyalgia and that the medical evidence satisfies the diagnostic criteria of SSR 12-2p. [Pl. Brief at 6-7; AR 224-25, 228-29.] Plaintiff's argument, however, is not supported by the record.

First, Plaintiff does not cite to a diagnosis of fibromyalgia from a physician or acceptable medical source. SSR 12-2p, 2013 WL 3104869 at *2. Instead, Plaintiff refers to the report of an examining physician, Dr. Khuram Sial, which references Plaintiff's complaint of fibromyalgia and indicates that Plaintiff was assessed with a widespread pain index ("WPI") score of 18 and a symptom severity scale ("SS") score of 6. [Pl. Brief at 6.] But Dr. Sial did not diagnose fibromyalgia. Rather, Dr. Sial diagnosed Plaintiff with myofascial pain syndrome, cervicalgia, and lumbago. [AR 223, 227, 232.] There is also no indication in the record that any other physician diagnosed Plaintiff with fibromyalgia.[2] That fibromyalgia was mentioned in the medical records or reported by Plaintiff does not constitute a diagnosis from a medically acceptable source, as required by SSR 12-2p. *See*, *e.g.*, *Jordon v. Berryhill*, No. 2:16-CV-00322, 2017 WL 6816694, at *9 (E.D. Tenn. Nov. 30, 2017) ("Fibromyalgia simply appearing on records without more or Plaintiff reporting she has the condition does not constitute a diagnosis as required by Section I of SSR 12-2p.").

Second, Plaintiff has not provided evidence from an acceptable medical source to satisfy the 1990 Criteria or the 2010 Criteria. While Dr. Sial's report indicates that the widespread pain requirement of both the 1990 Criteria and the 2010 Criteria is satisfied, there is insufficient medical evidence to satisfy all of the remaining criteria. The record contains no indication that a physician conducted a physical examination of tender points or that a physician ruled out other disorders as

---

[2] A medical record from November 2014 shows that Plaintiff reported fibromyalgia during an examination, but the physician diagnosed Plaintiff with diabetes (no complication Type I or II), generalized weakness, osteoporosis, and unspecified osteoarthrosis. [AR 186.]

5

causing Plaintiff's symptoms, as required by the 1990 Criteria. SSR 12-2p, 2013 WL 3104869 at *3. As for the 2010 Criteria, while Dr. Sial's reports indicates that Plaintiff manifests some fibromyalgia symptoms, signs or co-occurring conditions (i.e., fatigue, waking unrefreshed, and various somatic symptoms), there is no indication in the record that disorders that could cause these manifestations were excluded. [AR 229]; *see* SSR 12-2p, 2013 WL 3104869 at *3. As noted, Dr. Sial diagnosed Plaintiff with myofascial pain syndrome, cervicalgia, and lumbago, and not fibromyalgia. [AR 223, 227, 232.]

Accordingly, the ALJ's determination that Plaintiff does not have a medically determinable, severe impairment of fibromyalgia is supported by substantial evidence.

**B. Examining Physician**

Plaintiff contends the ALJ erroneously rejected the opinion of the examining internist, Dr. Bahaa Girgis. [Pl. Brief at 7-9.] Plaintiff argues that the ALJ improperly discounted Dr. Girgis' finding that Plaintiff would need to make "frequent stops" for about "10 minutes per hour" when walking and standing. [AR 27, 182.]

An ALJ must provide clear and convincing reasons supported by substantial evidence in rejecting the uncontradicted opinion of an examining physician, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and specific and legitimate reasons supported by substantial evidence to reject the contradicted opinion of an examining physician, *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). However, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory, brief, and not supported by clinical findings. *See Tonapetvan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

6

Dr. Girgis conducted an internal medicine evaluation of Plaintiff in October 2014. [AR 178-83.] He found that Plaintiff's conditions included: morbid obesity status post gastric bypass surgery; peripheral neuropathy; thyroid cancer status post total thyroidectomy; diabetes mellitus Type II, well controlled; multiple bone pain; and chronic back pain. [AR 182.] Dr. Girgis determined that Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds frequently, sit 6 hours in an 8-hour workday, and stand and walk 6 hours in an 8-hour workday with "frequent stops about 10 minutes per hour." [AR 182.]

The ALJ agreed with Dr. Girgis' opinion to the extent it was consistent with an RFC for medium work, but disagreed with Dr. Girgis' finding that Plaintiff would need frequent stops of 10 minutes per hour while standing and walking. [AR 27, 182.] The ALJ reasonably rejected this limitation because it was not well supported by Dr. Girgis's own findings on examination. [AR 27]; *see Bayliss*, 427 F.3d at 1216 (finding discrepancy between a physician's notes, recorded observations, and opinions and the physician's assessment of claimant's limited ability to stand and walk was a clear and convincing reason for rejecting the opinion); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's assessment of claimant's functional limitations as unsupported by physician's treatment notes). The ALJ observed that Dr. Girgis found no evidence of joint deformity or effusion or swelling in the lower extremities and reported that Plaintiff had a normal gait and normal coordination. [AR 27, 180-82.] While Plaintiff notes that Dr. Girgis reported decreased sensation to vibration and touch in both Plaintiff's lower extremities which may be associated with peripheral neuropathy [Pl. Brief at 8], Dr. Girgis stated that Plaintiff's sensory exam was otherwise grossly intact and equal bilaterally. [AR 182.] In addition, Dr. Girgis reported that Plaintiff "walks and moves easily," was "able to change position and get on and off the examining table without difficulty," displayed grossly normal range of motion in the bilateral hips, knees, and ankles, and had normal reflexes

7

bilaterally, good tone with good active motion, no atrophy or fasciculation, strength of 5/5 throughout, no focal motor deficits, no tenderness to palpation to the midline and paraspinal areas of the back, negative straight leg raising test at 90 degrees (seated and supine positions), and only a mildly decreased range of motion in the back (flexion to 88 degrees and lateral bending to 30 degrees). [AR 180-82.] Further, Dr. Girgis found that Plaintiff could climb, stoop, kneel, crouch, and crawl without limit. [AR 183.] Thus, the ALJ's conclusion that Dr. Girgis' recorded observations and opinions regarding Plaintiff's capabilities conflict with the assessed limitation that Plaintiff would need frequent breaks of about 10 minutes for every hour of standing and walking is supported by substantial evidence. [AR 180-83.] Such a conflict was a specific and legitimate reason for discounting Dr. Girgis' opinion. *See Bayliss*, 427 F.3d at 1216; *Connett*, 340 F.3d at 875; *see also Tonapetvan*, 242 F.3d at 1149; *Batson*, 359 F.3d at 1195. Although Plaintiff disagrees with the ALJ's conclusion, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

### C. Plaintiff's Pain and Symptom Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for discounting her subjective symptom testimony. [Pl. Brief at 9-12.] For the reasons discussed below, the ALJ did not err.

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *Smolen*, 80 F.3d at 1284. The ALJ must identify what testimony is not credible and what evidence discredits the

testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified that she was unable to work due to pain throughout her body, headaches, and weakness in her bones. [AR 26, 605-07, 609.] She complained that she "can't really do anything," spends her days lying down (about five hours) or sitting, and does not exercise, prepare meals, drive, vacuum, do laundry, shop for groceries, or help her three children get to or from school. [AR 26, 608-11, 613-16.] Plaintiff claimed that she has difficulty sleeping and is unable to stand more than 5 minutes, sit more than an hour, lift more than a plastic cup, walk more than "a little bit," or eat without vomiting. [AR 26, 609, 611, 613, 616-17.]

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements concerning intensity, persistence and limiting effects of the symptoms were not entirely credible. [AR 26-28.] The ALJ first indicated that the medical evidence of record did not support the level of limitation alleged by Plaintiff. [AR 27-28.] A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ noted there were no documented findings of weakness on a sustained basis, joint swelling, or deformity and Plaintiff had normal motor strength, reflexes, and gait. [AR 27-28, 180-82.] The ALJ also cited a lack of any diffuse muscle atrophy despite Plaintiff's claim that she leads an inactive lifestyle that consists primarily of lying down or sitting all day. [AR 28, 180-82, 608-11, 615-16.] The ALJ found that while Plaintiff complained that she vomits after eating and is unable to hold down food, she has been described

9

as "well nourished" and has maintained a relatively stable weight since undergoing gastric bypass surgery in 2013. [AR 26-28, 180, 221, 245-46, 252, 254, 256, 261, 611.] It was thus appropriate for the ALJ to conclude the objective medical evidence did not support Plaintiff's allegations of disabling physical limitations.

Second, the ALJ cited Plaintiff's minimal treatment for her musculoskeletal complaints. [AR 28.] The ALJ noted that the record contained no recommendation for surgical intervention and that Dr. Sial actually advised Plaintiff to maintain normal daily activities and avoid prolonged bed rest. [AR 28, 232.] "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where plaintiff's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Finally, the ALJ found that Plaintiff has a spotty work history, suggesting that her lack of employment is related to her preference not to work, rather than her claimed inability to work. [AR 28, 83-84.] Evidence of a poor work history is a clear and convincing reason to discredit a claimant's credibility. *Thomas*, 278 F.3d at 958-59 (upholding ALJ's negative credibility determination because, among other factors, plaintiff's "work history was spotty, at best" and she "has shown little propensity to work in her lifetime"); *see* 20 C.F.R. § 416.929(c)(3) (an ALJ may consider a claimant's prior work record when assessing credibility). Plaintiff's earnings report demonstrates that Plaintiff had no earnings in 2002, 2003, 2004, 2006, and 2010, and very limited earnings in 2000, 2001, 2005, 2007, 2008, 2009, and 2012. [AR 83.] Thus, the ALJ properly considered Plaintiff's work history in discounting her credibility. *See Thomas*, 278 F.3d at 958-59.

Accordingly, the Court concludes that the ALJ provided specific, clear and convincing reasons, supported by substantial evidence, for finding Plaintiff's testimony less than fully credible.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS ORDERED.**

DATED: February 14, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE